UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>RICKY BLACKWELL,<br><br>　　　　　　Defendant. | No. 1:19-cr-00063-DAD-BAM-1<br><br>ORDER DENYING DEFENDANT BLACKWELL'S MOTION FOR REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(2)<br><br>(Doc. No. 48) |

　　　　On December 20, 2021, defendant Ricky Blackwell filed a *pro se* motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 48.) The motion is based in part on the effect of the COVID-19 coronavirus pandemic on conditions of confinement. (*Id.* at 2.) For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

　　　　On November 17, 2020, defendant Blackwell entered pleas of guilty to one count of possession with intent to distribute cocaine in violation of 20 U.S.C. § 841(a)(1) and one count of possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c). (Doc. Nos. 35 at 2, 37.) On February 9, 2021, the court sentenced defendant to a term of imprisonment of 18 months for possession with intent to distribute cocaine and the mandatory consecutive term of 60 months on the § 924(c) count, for a total aggregate term of 78 months in

1

the custody of the U.S. Bureau of Prisons ("BOP"), followed by concurrent terms of supervised release of 36 months on each count. (Doc. No. 47 at 2–3.) The court also imposed the mandatory $200.00 special assessment. (*Id.* at 7.)

Defendant is currently serving his sentence at United States Penitentiary Beaumont ("Beaumont USP") in Beaumont, Texas. (Doc. No. 50 at 4.) As of the date of this order, and including prior jail time credits, defendant has served approximately 39 months of his 78-month sentence. (Doc. No. 51 at 4.) Accounting for good time credit, his projected release date is October 9, 2024. (*Id.* at 3.)

As noted, on December 20, 2021, defendant filed a *pro se* motion for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 48.) The government filed a response thereto on February 2, 2022. (Doc. No. 50.) After being granted two extensions of time to do so, defendant did not file a reply brief in support of his motion and the time to do so has now passed. (Doc. Nos. 56, 58.)

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a

/////

/////

2

>motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018)[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit has now held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020)

---

released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). However, as the Ninth Circuit has now clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).

("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ( "In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'") (citation omitted); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

# ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in § 3553(a)).

**A.   Administrative Exhaustion**

In this case, the government concedes that defendant has exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. No. 50 at 4.) Specifically, defendant Blackwell submitted a written request for compassionate release to the warden of Beaumont USP on November 8, 2021, and the warden denied that request on November 22, 2021.[4] (*Id.*) Accordingly, the court will turn to the merits of defendant's motion.

**B.   Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical

---

[4] Neither party has addressed whether the defendant was required to administratively appeal the warden's denial. Because a failure to exhaust administrative remedies is normally viewed as an affirmative defense which must be pled and proven, the court will accept the government's concession regarding administrative exhaustion and will address the merits of defendant's pending motion.

6

conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). As addressed above, even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.) Moreover, in light of the Ninth Circuit's decision in *Aruda*, while U.S.S.G. § 1B1.13 may inform its determination, this court is not restricted thereby and instead has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111.

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by the ongoing COVID-19 pandemic may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*,

*Parker*, 461 F. Supp. 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[5]

In the pending motion, defendant Blackwell argues that extraordinary and compelling reasons warranting a reduction of his custodial sentence exist because (1) he has previously contracted COVID-19; (2) the COVID-19 coronavirus pandemic has caused him to suffer "unusually harsh" conditions of confinement at Beaumont USP, including the inability to participate in educational programs; (3) he has been subject to violent attacks while in BOP custody; and (4) his mother recently passed away and he "is needed to handle his mother's estate, to protect the interest of his son who is 9 years old." (Doc. No. 48 at 3–9.)

In opposition to the pending motion, the government argues that defendant Blackwell has failed to carry his burden of establishing his eligibility for compassionate release because the mere existence of COVID-19 in society or in the correctional institution where he is imprisoned is not an extraordinary and compelling reason justifying the granting of the requested relief. (Doc. No. 50 at 7.) The government notes that defendant previously contracted and recovered from COVID-19 prior to entering BOP custody and that defendant's medical records do not indicate

---

[5] Here, however, because defendant Blackwell is only 31 years old (Doc. No. 50 at 2), his age and age-related factors do not play a role in consideration of his pending motion.

1   that defendant suffers from any underlying health conditions that may place him at an increased
2   risk of severe complications from COVID-19 were he to be re-infected with the virus.  (*Id.* (citing
3   Doc. No. 54 at 41—sealed).)  The government emphasizes that of particular importance is the fact
4   that during his term of imprisonment defendant Blackwell was offered and refused the COVID-19
5   vaccine, thereby undermining his argument that extraordinary and compelling reasons exist based
6   on the risk of severe illness posed to him were he to contract COVID-19 again.  (Doc. No. 50 at
7   7–8 (citing Doc. No. 54 at 44—sealed).)  The government also contends that defendant's family
8   situation "is extremely unfortunate, but it is not an extraordinary reason that warrants a reduction
9   in [defendant] Blackwell's sentence."  (Doc. No. 50 at 9.)

10         The court concludes that defendant has failed to show the existence of extraordinary and
11   compelling reasons calling for his release from confinement in light of the critical fact that he has
12   refused vaccination to protect himself from the COVID-19 virus, combined with the fact that he
13   has already suffered from COVID-19 and recovered and that at this time USP Beaumont is
14   reporting that no inmates or staff members at that institution are suffering with active, positive
15   COVID-19 cases.  *See* Federal Bureau of Prisons, COVID-19 Coronavirus, available at
16   https://www.bop.gov/coronavirus/ (last visited June 7, 2022).  Furthermore, the BOP reports that
17   Federal Correctional Complex Beaumont, of which Beaumont USP is a part, has completed 3,547
18   full inmate inoculations and 495 full staff inoculations against COVID-19.  *See id.*  Moreover,
19   defendant Blackwell does not identify any medical condition that he may suffer from that places
20   him at higher risk of severe complications if he were to contract COVID-19 again, and his
21   medical records do not suggest that he suffers from any such medical condition.  (*See* Doc. Nos.
22   48, 54—sealed.)

23         As to defendant's unvaccinated status, the government notes, and defendant's medical
24   records reflect, that he refused to receive the COVID-19 vaccine on June 15, 2021; thus,
25   defendant had the opportunity to be vaccinated before he filed the pending motion for
26   compassionate release and declined.  (Doc. Nos. 50 at 7; 54 at 44—sealed.)  While vaccinated
27   individuals may nonetheless contract COVID-19, it appears rare for a vaccinated individual to
28   both contract the virus and to suffer a severe illness as a result.  *See* Lila Seidman, *Napa County*

9

*Records First Death of Fully Vaccinated Person from COVID-19*, L.A. Times (June 7, 2021), https://www.latimes.com/california/story/2021-06-07/napa-county-records-first-fully-vacinated-person-covid-death. Here, defendant is seeking his release from prison based on the argument that he will suffer a severe illness if he were to contract COVID-19 again. According to the CDC, authorized vaccines in the U.S., including the Pfizer-BioNTech vaccine, "are highly effective at protecting vaccinated people against symptomatic and *severe* COVID-19." *See COVID-19: Interim Public Health Recommendations for Fully Vaccinated People*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (last updated July 27, 2021) (emphasis added). At this point, medical evidence strongly suggests that fully vaccinated individuals are very well protected against becoming severely ill from COVID-19. *See United States v. Pigford*, No. 2:20-cr-00414-MAK, 2022 WL 2019978, at *4 (E.D. Pa. June 6, 2022) (denying motion for compassionate release and noting that "[i]t is also well-settled COVID-19 vaccinations 'are highly effective at preventing infection and . . . at reducing the severity of symptoms' from COVID-19 and its presently known variants."); *United States v. Ochoa-Alapisco*, No. 14-cr-378-ADM-LIB-2, 2021 WL 2322680, at *3 (D. Minn. June 7, 2021) (denying compassionate release because "any risk . . . has been substantially reduced because [defendant] is likely now fully vaccinated" which "provides him with significant protection against severe illness or death from COVID-19 should he become reinfected"); *United States v. Willis*, No. 3:15-cr-00465-BR, 2021 WL 2179256, at *3-4 (D. Or. May 27, 2021) (concluding that federal prisoners who have been fully vaccinated but suffer from chronic medical conditions that would put them at serious risk of severe illness from COVID-19 do not satisfy the extraordinary and compelling standard for compassionate release) (citing cases); *United States v. Smith*, No. 2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United States v. Kariblghossian*, No. 2:13-cr-00318-CAS-1, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (finding no extraordinary and

compelling reasons for compassionate release where defendant has been fully vaccinated); *United States v. Grummer*, 519 F. Supp. 3d 760, 763 (S.D. Cal. 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19. Other courts to address the issue have reached similar conclusions."); *United States v. Ballenger*, No. 3:16-cr-5535-BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release."). Notably, as another judge of this court emphasized, "[i]f defendants could buttress their motion for compassionate release by refusing a safe and effective vaccine, they would be operating on an unfairly perverse incentive." *United States v. Figueroa*, No. 2:09-cr-00194-KJM, 2021 WL 1122590, at *4 (E.D. Cal. Mar 24, 2021); *see also United States v. Darby*, No. 2:13-cr-00631-KM, 2022 WL 1423089, at *7 (D.N.J. May 5, 2022) ("There is, moreover, reason to be skeptical of a prisoner who claims to fear for his life, yet refuses to take routine measures to protect himself against COVID-19 infection."). The undersigned agrees and concludes it would set a dangerous and unreasonable precedent if the court were to allow inmates who refuse vaccination to successfully rely upon that fact to support their claims for compassionate release.

Defendant also argues that extraordinary and compelling reasons for his release exist because he was violently attacked by other inmates during the beginning of his incarceration at USP Beaumont, resulting in him suffering a broken jaw. (Doc. No. 48 at 7–8.) The court certainly condemns the September 2020 attack that defendant Blackwell was reportedly the victim of while in BOP custody. (*See id.*) However, a single isolated attack by unidentified perpetrators and for unidentified reasons, apparently unrelated to any circumstance posed by the COVID-19 pandemic that caused the other allegedly harsh conditions of his confinement, does not constitute an extraordinary or compelling reason for compassionate release. Any alleged failure to protect the defendant in the past is not a basis for releasing him now absent some further showing. The court notes that defendant has not alleged that he has been the victim of any other attacks since September 2020. (*See id.*). Of course, "speculative and conclusory arguments do

11

not . . . support early release." *United States v. Doiel*, No. 3:12-cr-00009-HDM-VPC, 2022 WL 1084695, at *3 (D. Nev. Apr. 11, 2022) (finding a defendant's arguments regarding the BOP's failure to protect him against attack from other inmates to be speculative and not warranting compassionate release).

As to defendant's recent family circumstances, the court recognizes and certainly sympathizes with the defendant due to the death of his mother. (*See* Doc. No. 48 at 9.) However, the need to handle his mother's estate alone is not an extraordinary or compelling reason warranting compassionate release. With respect to concerns defendant may have for his young son, the Sentencing Commission's advisory policy statement specifically addresses situations regarding the care of minor children: comment 1(C)(i) of § 1B1.13 of the Sentencing Guidelines states that "the death or incapacitation of the caregiver of the defendant's minor child or minor children" can provide the extraordinary and compelling reasons justifying compassionate release. But, while defendant Blackwell has asserted that his release from prison is required to "protect the interest" of his nine-year-old son, defendant does not assert that his deceased mother was his son's caregiver. (*Id.*) Indeed, defendant provides evidence that his wife is alive and well, with no indication that she cannot care for his son or protect his son's interests in regards to defendant's mother's estate. (*See id.* at 20 (letter of support from defendant's wife).)

In light of all of the above, the court concludes that defendant Blackwell has not met his burden of demonstrating extraordinary and compelling reasons for his compassionate release under § 3582 (c)(1)(A), in large part because the risk he asserts he wishes to avoid could be significantly mitigated by his receiving of the COVID-19 vaccination. Therefore, his motion for compassionate release will be denied.

**C.    Consistency With the § 3553(a) Factors**

Finally, even if defendant Blackwell's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not

/////

/////

/////

persuaded that the requested reduction in his sentence would be consistent with the consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[6]  *See Parker*, 461 F. Supp. 3d at 979.

Defendant asserts that he has accepted responsibility for his prior actions and "made transformational changes as reflected by his letter to the Court and his efforts to change." (Doc. No. 48 at 11.)  Defendant contends that he has pursued rehabilitative programs despite the limitations imposed in response to the COVID-19 pandemic, and, citing letters of support attached to his pending motion, that he has the support of his family and friends.  (*Id.* at 11, 20–23.)  Defendant Blackwell emphasizes that he was "convicted of a non-violent drug offense," has no disciplinary record of violence while in BOP custody, and that he did not "distribute a substantial amount of drugs." (*Id.* at 12.)  Defendant contends that his compassionate release would "restore the trust and integrity of the criminal justice system in underprivileged communities." (*Id.* at 12.)  Finally, defendant contends that he has a lower risk of recidivism because his incarceration has "brought maturity and desire to change," and that the change in maturity, his family support, and his term of supervised release together ensure that he is not a threat to the public.  (*Id.* at 13.)

The government contends that consideration of the § 3553(a) sentencing factors does not support a shortened sentence due to the seriousness of defendant's offenses and defendant's criminal history.  (Doc. No. 50 at 9–10.)  The government emphasizes that defendant has served less than half of his 78-month sentence that this court imposed, now only fifteen months ago on February 8, 2021. (*Id.*)

---

[6] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

As noted above, defendant Blackwell is currently serving a 78-month sentence of imprisonment for one count of possession with intent to distribute cocaine in violation of 20 U.S.C. § 841(a)(1) and one count of possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c).  (Doc. No. 35 at 2.)  At the time of his sentencing, defendant was found to be responsible for two ounces of cocaine and five ecstasy pills.  (Doc. No. 40 at 6.)  Pursuant to the Presentencing Investigative Report, defendant's total offense level in this case was 12 and his extensive criminal history placed him in category VI, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 30 and 37 months with respect to his conviction for possession with intent to distribute cocaine, and a 60-month mandatory minimum consecutive term for the possession of a firearm in furtherance of a drug trafficking offense conviction.  (*Id.* at 22.)  Nonetheless, the undersigned varied downward from the guideline range after considering the § 3553(a) sentencing factors and imposed an aggregate sentence of 78-months of imprisonment.  (Doc. No. 47 at 2.)[7]

The court recognizes defendant's lack of a disciplinary record while in BOP custody. Even assuming evidence of defendant's rehabilitative efforts existed, rehabilitation alone is generally not enough to warrant compassionate release.  *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3.  Furthermore, "'[t]he length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion."  *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *6 (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences").  Here, as of the date of this order, defendant has served

---

[7] The government argued for a 90-month term of imprisonment.  (Doc. No. 42 at 4.)  At the time of sentencing, defendant Blackwell's counsel argued for an aggregate sentence of 75 months in prison.  (Doc. Nos. 41 at 2, 8; 43 2, 8.)  The court varied down to a sentence only three months more than that requested by the defense and twelve months less than that argued for by the prosecution.

approximately 50% of the 78-month sentence imposed.  (Doc. No. 51 at 4.)  In the court's view, considering that defendant already received a sentence reflecting the court's variance below the applicable guideline range, a reduction of defendant's 78-month sentence would not adequately reflect the seriousness of his offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct.  *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993, at *5; 18 U.S.C. § 3553(a).

Thus, on balance, the court finds that granting defendant's motion and reducing his sentence to one of time served would not be consistent with consideration of the § 3553(a) sentencing factors.

**CONCLUSION**

Because defendant Blackwell has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582 (c)(1)(A) or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 48) is denied.

IT IS SO ORDERED.

Dated: __**June 8, 2022**__                    _Dale A. Drozd_
                                                                  UNITED STATES DISTRICT JUDGE